BEATTY, Justice.
Appeal by defendant Zenon Dembitsky from a judgment for plaintiff Alf Gamble d/b/a A G Associates (Gamble), in plaintiff’s action based upon breach of contract and conversion. We reverse and remand.
The action arose out of the sale of a Piper Aztec airplane sold by Gamble to Dembitsky, with Gamble taking as payment a promissory note executed by Jim Abercrombie. It appears that both Dem-bitsky and Gamble had had a number of business dealings with Abercrombie prior to the sale of the airplane and that they had such dealings subsequently. At the time of the sale, in fact, Abercrombie owed Gamble a considerable amount of money, between $25,000 and $50,000, and also owed Dembitsky a sum of money in excess of $67,500. Dembitsky was a licensed commercial pilot, who flew the Piper Aztec for Gamble, its owner. Gamble and Dembitsky agreed that Dembitsky would forgive $67,500 of the amount Aber-crombie owed him, and Abercrombie instead would owe Gamble that amount. Abercrombie acceded to this arrangement, then executed a promissory note payable in 30 days to Gamble for $77,625, representing the principal amount of $67,500 plus 15% interest. In addition, Gamble paid Dembitsky $7,500. Title to the airplane was transferred from Gamble to Dembit-sky. Gamble took Abercrombie’s promissory note in payment for the airplane, without retaining any security interest.
Gamble received four monthly interest payments from Abercrombie in the aggregate amount of $40,500 and never demanded payment in full.
When Abercrombie subsequently defaulted, Gamble filed his complaint against Dembitsky, alleging (1) failure of consideration; (2) conversion; (3) wrongful detention; (4) goods sold and delivered; and (5) breach of contract.
The case was tried ore tenus without a jury and resulted in a judgment for plaintiff for return of the airplane. Defendant’s motion for a new trial was denied, and this appeal followed.
*1220 In its order, the trial court made findings of fact as follows:
“The Court finds that the sale of the airplane by plaintiff to defendant, payment of which was to be made by a third party, Jim Abercrombie, as evidenced by Abercrombie’s promissory note, was laced with deception and fraud on the part of Abercrombie, of which the defendant was aware and is therefore null and void. The Court makes its finding after considering the total aspect of the case and judging the credibility or non-credibility of the witnesses. The Court finds the credibility of defendant’s testimony slightly less than plaintiff, thus their testimony cannot be given equal weight.”
On appeal, the defendant contends that the trial court was in error in finding that the sale “was laced with deception and fraud on the part of Abercrombie, of which the defendant was aware and [the note] is therefore null and void.” Such a finding, it is apparent, was a finding that the purchaser, Dembitsky, defrauded Gamble by joining in the fraud. Cf. Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83 (Ala.1980).
Of course, it is axiomatic that the trial court’s decision in a case heard ore tenus will be affirmed if it is “fairly supported by credible evidence under any reasonable aspect, and is not palpably wrong or manifestly unjust.” Whitt v. McConnell, 360 So.2d 336, 337 (Ala.1978). Our review of the entire record convinces us that the judgment entered below was palpably wrong.
It was established by the testimony of both Gamble, the plaintiff, and Dembitsky, the defendant, that the promissory note of Abercrombie was the consideration for the sale of the airplane; that Gamble entered into this transaction voluntarily and knowingly; and that he never looked to Dembit-sky for an additional consideration until Abercrombie ceased payments on the note. Indeed, Gamble testified to his satisfaction with the deal until then:
“Q. In June of 1983, did you have an occasion to have a discussion with Mr. Dembitsky concerning the sale of your airplane?
“A. Yes, sir.
“Q. Would you please tell the Court the substance of that conversation.
“A. I had found another airplane that I would have preferred to have owned, and I offered to sell Mr. Dembitsky this airplane for sixty thousand dollars, originally.
“Q. And what did Mr. Dembitsky say?
“A. He came back and suggested that we make the sale price sixty-seven thousand, five hundred dollars, but that I rebate to him the seventy-five hundred dollars which was — which we did.
“Q. All right, sir. And was there any discussion at that time of Mr. Abercrom-bie buying the airplane?
“A. He was, in effect, paying for the airplane by tendering me a note in behalf of Mr. Abercrombie.
“Q. Mr. Dembitsky was?
“A. Yes, sir.
“Q. All right. Was there any discussion about any ownership of the airplane between you and Mr. Dembitsky by Mr. Abercrombie?
“A. Mr. Dembitsky and I agreed that Mr. Abercrombie couldn’t fly the airplane and that the airplane be titled in Mr. Dembitsky’s name. He made the transaction.
“Q. This note that has been marked and received into evidence, is this the piece of paper for which you paid?
“A. That’s correct.
“Q. And did you receive any money from Mr. Abercrombie after June of 1983 towards the purchase of the airplane?
“A. I received his interest of four payments of forward and four redated notes.

“Q. The note that is Plaintiff’s Exhibit Number One is a thirty-day note. The entire amount was due on July 30th, 1983. Is that correct?
*1221 “A. Yes, sir.
“Q. When did he make his first payment to you?
“A. August the 1st.
“Q. He made four payments to you. Is that correct?
“A. I think so.
“Q. And did you get four new notes, or a new note each time?
“A. I’m sure I did.
“Q. Could you have demanded full payment at any time on each thirty days?
“A. It was represented that way, but we don’t know.
“Q. And did you demand full payment?
“A. No, sir.
“Q. Why did you not do that?
“A. That wasn’t the way the trade was made.
“Q. Is the way that the trade was made that you wanted to get this fifteen percent interest each month?
“A. Yes, sir.
“Q. But since it was a thirty-day note, the entire note was due at the end of the thirty-day period?
“A. Yes, sir.
“Q. And each time you collected the interest payment, you determined that you just wanted the interest payment and you would roll the principal with it. Is that correct?

“A. I did that.

“Q. Did you do that voluntarily?
“A. Yes, sir.
“Q. The transaction that you made with Mr. Dembitsky, did you title the aircraft directly into his name?
“A. Yes, sir.
“Q. At that time, was there any outstanding security interest on the aircraft?
“A. I—
“Q. Did someone have a mortgage on it or something to that effect?
“A. I had borrowed against my company’s stock which made the paperwork easier.
“Q. Did you retain any documents or security documents representing the mortgage interest in the aircraft when you made the arrangement with Mr. Dembitsky?

“A. No, sir.

“Q. Okay.
“A. It was on a friendship basis.
“Q. And you were willing at that time to accept the payment from Mr. Dembitsky. You were willing to accept the note from Mr. Abercrombie. Isn’t that correct?
“A. I did.” (Emphasis added.)
It is clear from this testimony, moreover, that Gamble accepted Abercrombie’s promissory note without requiring any other security for payment of the debt.
Dembitsky explained why he received $7,500 from Gamble when the sale was closed:
“Q. Now, explain to the Court, if you would, why, after reaching an agreement with Mr. Gamble to purchase an airplane for sixty-seven thousand, five hundred dollars, would you then receive monies from Mr. Gamble for seven thousand, five hundred?
“A. I had approximately seventy-five hundred dollars worth of expenses on the [Gamble] aircraft, and when Abercrom-bie was to buy the aircraft, I wanted him to pay half of the sixty-seven thousand, five hundred in order to receive half of the expenses back. I never got that because he defaulted on the expenses in addition to everything else that he had defaulted on. So, Mr. Gamble only wanted sixty thousand for the airplane, and I said I would get sixty-seven, five for the airplane and that I would draw that much more money out from the jeans business that Mr. Abercrombie was with. And Mr. Gamble agreed to do it this way.”
Gamble, himself, did not challenge this arrangement. As Dembitsky testified, he revealed his belated knowledge that Aber-crombie never intended to repay his promissory notes:
*1222 “Q. ... You later learned that these notes were nothing but a fraudulent scheme on the part of Abercrombie, did you not?
“A. Yes. I found that out in December.
“Q. In December of 1983; is that correct?
“A. Yes.
“Q. And all of this was a big sham on the part of Abercrombie, and he is now in prison, is he not, for it?
“A. Yes.
“Q. And you found out in December of 1983 that he never had any intentions of paying any of these notes, didn’t you?
“A. I can’t say that because he kept paying on them all along, but I found out in December that he certainly wasn’t going to pay me, and he didn’t pay me. And that’s when I realized that I—
“Q. Did you find out in December it was an overall scheme by Abercrombie and he never had any intention of paying off any of it?
“A. That’s when I found out. December.”
None of the evidence adduced at trial in any way implicated Dembitsky with Abercrombie in a scheme or design to defraud or otherwise injure Gamble. Quite the contrary. What the record shows is that Abercrombie owed Dembitsky money from business transactions they were engaged in together. Gamble was also a business acquaintance of Abercrombie. Dembitsky, who flew this airplane for Gamble, saw the sale as a way to obtain some of the debt owed him by Abercrom-bie, and Gamble, in an arm’s length transaction, was willing to accept Abercrombie’s promissory note in exchange for conveying the airplane to Dembitsky. The note executed by Abercrombie, and accepted as payment for the airplane by Gamble, was sufficient consideration in itself for the sale. Files v. Schaible, 445 So.2d 257 (Ala.1984). Indeed, Gamble received substantial interest payments from the maker and took four renewal notes from Abercrombie after the sale had been comsummated. In short, the sale of the airplane was closed when Gamble took Abercrombie’s promissory note and title to the airplane was transferred to Dembitsky.
Furthermore, the claim of fraud on Dembitsky’s part, that is, of knowing of some scheme of Abercrombie’s and joining in it, was not made at trial. None of the evidence introduced at trial in any way implicates Dembitsky. It was after the trial had been completed, and plaintiff filed with the court a post-trial memorandum, that the argument was made that Dembit-sky had made a misrepresentation concerning the value of the Abercrombie note. As the record affirmatively discloses, no evidence supporting such an assertion was ever introduced. The record, moreover, fails to establish any support for the allegations of the complaint. Plaintiff failed to prove any ground for rescission, any wrongful detention by Dembitsky, any liability for goods sold, any breach of contract, any failure of consideration, or any fraudulent conduct on the part of Dembit-sky. The law of fraud is unavailable to the victim of a business transaction which merely goes sour. Having so found, we need not discuss defendant’s contention that plaintiff failed to allege fraud properly under Rule 9(b), A.R.Civ.P.
The judgment is reversed and the cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, AL-MON, and HOUSTON, JJ., concur.