Specialty Container Manufacturing, Inc. ("Specialty"), filed an action against Rusken Packaging, Inc. ("Rusken"); Merchants Transfer Company, Inc. ("Merchants"); Coastal Container, Inc. ("Coastal"); Bobby Rusk; and Gregory Rusk, alleging breach of contract, misrepresentation, tortious interference with business and contractual relations, and unfair business practices; the action also sought the return of certain equipment or, alternatively, damages for the value of that equipment. Specialty originally included Southern Aluminum Casting, Inc., as a defendant in the action but later voluntarily dismissed that corporation. The trial court entered summary judgment for all of the defendants on all of Specialty's claims.
Specialty filed its action on June 9, 1988, and, accordingly, in order to defeat a properly supported summary judgment motion, it must offer substantial evidence to show a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Home Bank ofGuntersville v. Perpetual Federal Savings Loan Association,547 So.2d 840 (Ala. 1989). In determining whether there is substantial evidence to defeat a summary judgment motion, this Court reviews the record in the light most favorable to the non-movant and resolves all reasonable doubts against the movant. Sanders v. Kirkland Co., 510 So.2d 138 (Ala. 1987). *Page 405 
The evidence, viewed in the light most favorable to Specialty, indicates that on June 9, 1986, in response to an offer by Albert Joyner, vice president of Specialty, to sell that company for $257,000, Mike Rose, who allegedly represented to representatives of Specialty that he was Rusken's general manager, and Gregory Rusk visited Specialty's offices in Mobile. Rose indicated to Joyner that he was a principal with Gregory and Bobby Rusk in Rusken. Specialty avers that before Gregory Rusk returned to Cullman on the evening of June 9, 1986, he and Rose stated that the Rusks and Rusken would buy Specialty for $200,000.
Rose remained in Mobile and visited Specialty's offices the next morning. He allegedly told Joyner and Mary Marvin Anderson, Specialty's accountant, "We have a deal." Rose proceeded to interview Specialty's employees to determine who the new owners would and would not retain. Sherwood Helms, who Specialty calls its "key sales representative," testified that during his interview Rose had indicated that Specialty had been sold and that Rose was in the process of determining who to retain and who to fire. Helms quit working for Specialty two weeks after talking to Rose. Rose interviewed many of Specialty's other workers, including Specialty's production manager, Jim Cruthirds. Rose allegedly told Cruthirds that he did not like anything he saw and that he seriously doubted that Cruthirds would continue to be employed at Specialty. Cruthirds also quit, although he eventually returned to work when the purchase did not occur.
Rose then obtained Specialty's customer lists, accounts receivable, and some of Specialty's orders and returned to Cullman. Later, he contacted Joyner to say that the Rusks and Rusken would not purchase Specialty for $200,000. On Tuesday night Rose and Gregory Rusk offered Joyner $75,000 for Specialty, and Joyner, although he testified that he considered the offer "obscene," agreed to consider it. The next morning Joyner proposed that the buyers give Specialty $50,000 cash, provide another $50,000 in 90 days if necessary, and provide a line of credit. It is unclear whether the Rusks and Rusken rejected this proposal; in any event, Joyner states that later that morning the Rusks and Rusken went back to their original offer of $200,000. Gregory Rusk told Joyner that Rose would come to Specialty the next day to complete the sale. The next day, at about 1:00 p.m., Rose called and said there was no deal. Although Specialty went out of business shortly after this breakdown of negotiations, Specialty resumed negotiations with the Rusks and Rusken, and Gregory and Bobby Rusk purchased most of Specialty's equipment for $102,500.
Specialty argues that the trial court erred by entering summary judgment on its claim that Rusken and Gregory and Bobby Rusk, individually, breached an oral contract to buy Specialty. We do not address whether the breach of contract action was barred by the Statute of Frauds; instead, we resolve Specialty's argument on other grounds. The evidence, even viewed as we have stated it here — in the light most favorable to Specialty — indicates that Specialty and the Rusks and Rusken were engaged in a series of proposals and counter-proposals, all of which ended in a temporary breakdown of negotiations. Specialty did not present substantial evidence to rebut the Rusks and Rusken's showing that there was no contract. The trial court properly entered summary judgment on that claim, and as to that claim the judgment is due to be affirmed.
Specialty contends that the trial court erred by entering summary judgment on its claim that both Rusken and Bobby and Gregory Rusk, individually, misrepresented their intentions to buy Specialty in order to obtain confidential business information about Specialty that would give them an unfair competitive advantage or superior bargaining power.
Although the parties discuss Specialty's claims in terms ofall of the evidence against all of the defendants, to analyze the case properly, we initially address whether Specialty has produced sufficient evidence to establish that Rusken and Gregory Rusk and Bobby Rusk, individually, *Page 406 
are subject to Specialty's claims. Specialty's claims against Gregory Rusk, individually, are permissibly based on Gregory Rusk's activities in relation to the claims. With regard to Specialty's claims against Bobby Rusk, individually, and Rusken, Specialty's arguments indicate that the claims are based on the actions of Rose and Gregory Rusk as agents of Bobby Rusk and Rusken. The record, viewed in the light most favorable to Specialty, indicates that Rose was the general manager of Rusken. Bobby Rusk, president and principal owner of the defendant businesses, stated that he gave Gregory and Rose permission to go to Mobile on June 9. Bobby Rusk stated that he knew that Rose and Gregory were going to see Joyner, that he knew that Rose and Gregory contacted Joyner, and that he knew that Rose returned to Cullman with Specialty's accounts payable and accounts receivable. Bobby Rusk instructed Rose to contact Joyner to inform him that the Rusks and Rusken were not going to purchase the business. Considering all of this evidence, we hold that Specialty presented substantial evidence that Gregory Rusk and Rose were acting as agents of Bobby Rusk and Rusken with apparent authority to act on their behalf.
In relation to Specialty's misrepresentation claim, the evidence, viewed in the light most favorable to Specialty, indicates that Rose told both Joyner and Specialty's accountant that the Rusks and Ruskens had agreed to purchase Specialty. Rose interviewed Specialty's employees and indicated to them during those interviews that Specialty had been sold; as a consequence of those interviews, both Specialty's leading salesman and its production manager resigned. Rose obtained from Specialty its customer lists, customer orders and specifications. By June 12, 1986, Rose had visited at least three of Specialty's customers and had told them that Specialty was going out of business, that it was bankrupt, and that it could no longer deliver its products.
The Rusks and Rusken cite Duke v. Jones, 514 So.2d 981 (Ala. 1987), and Dembitsky v. Gamble, 480 So.2d 1219 (Ala. 1985), for the proposition that Specialty cannot maintain its misrepresentation action, both because the negotiations took place over two months' time between experienced businessmen and because one cannot recover for fraud when a business transaction merely goes sour. Even if those cases stand for that proposition, they are distinguishable from the present case. The fraud claim in Duke was based on details involved in an existing contract; the claim was based on alleged misrepresentations by the buyer of a corporation to the seller concerning the method for repayment of promissory notes that the buyer gave to the seller. The Court held that the seller could not recover. The misrepresentation claim in this case concerns Rose's alleged statements to Specialty and its customers that a contract for the sale of Specialty existed while Gregory and Bobby Rusk at the same time were negotiating with Specialty on the terms of a contract that they argue was never formed. Dembitsky is also distinguishable. In Dembitsky, a business deal merely "went sour." The record indicates that it is for the jury to determine whether this action involves more than simply a business deal "going sour."
The Rusks and Rusken argue that Specialty cannot prove damages, because "the business was already facing its demise." The record indicates that Specialty was in unstable, perhaps bad, financial condition, before the June 1986 negotiations. Specialty showed a $182,000 loss for the preceding 10 months and accounts payable of $163,856. That poor financial condition, however, does not, as a matter of law, make it impossible for Specialty to have been damaged by the actions of the Rusks and Rusken. Specialty presented evidence that the actions of Rose and the Rusks resulted in the destruction of the good will, as well as other assets, of Specialty's business, except for its equipment; Specialty sold most of its equipment to the Rusks and Rusken. That evidence was sufficient to rebut the Rusks and Rusken's attempt to show that Specialty had no damages upon which to base its misrepresentation claim. *Page 407 
The Rusks and Rusken argue convincingly that they did not form a contract with Specialty for the purchase of that corporation, but, instead that they were engaged in ongoing negotiations with Specialty from June 9, 1986, until August 1986, when they purchased Specialty's equipment. That argument, accordingly, indicates that the actions by Rose occurredduring a period of ongoing negotiations between Specialty andthe Rusks and Rusken. Considering that Rose's actions, which a jury might conclude were conducted on behalf of the Rusks and Rusken, were conducted during what the Rusks and Rusken themselves characterize as a period of ongoing negotiations, we hold that Specialty presented substantial evidence of its misrepresentation claim and that, inasmuch as there is conflicting evidence supporting both Specialty's argument and the argument of the Rusks and Rusken, there exist genuine issues of material fact, suitable for jury determination. The trial court erred by entering summary judgment for Gregory Rusk, Bobby Rusk, and Rusken on Specialty's misrepresentation claim, and as to those defendants on that claim the judgment is due to be reversed.
Specialty argues that the trial court erred by entering summary judgment for both Bobby Rusk and Gregory Rusk individually and for Rusken on its claims of intentional interference with both contractual and business relations. Specialty specifically alleges that those defendants interfered with contractual and business relations between it and Southern Aluminum Casting, Inc., Merchants Transfer Company, Inc., Dimensional Products, Inc., Emperor Clock Company, Inc., and Sherwood Helms.
To prove its prima facie case, Specialty must show:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference; and
 "(5) Damage to the plaintiff as a result of defendant's interference."
Gross v. Lowder Realty Better Homes Gardens, 494 So.2d 590
(Ala. 1986).
Our earlier discussion of the evidence supporting Specialty's misrepresentation claim concerned the evidence that Specialty argues is proof of this claim; we must additionally discuss the evidence concerning Merchants, however. Merchants was the lessor of Specialty's building. The evidence, viewed in the light most favorable to Specialty, indicates that Rose contacted Merchants' real estate agent and indicated that Specialty would be going out of business. Although Specialty's rent payments were current, Merchants, on June 30, 1986, changed the locks on the doors to Specialty's business. Merchants required Specialty to pay rent for the next month before it would allow Specialty to re-enter the premises.
In addition to Rose's action in relation to Merchants, the evidence, viewed in the light most favorable to Specialty, also indicated that he contacted the other named businesses and told those businesses that Specialty was going out of business, that it was bankrupt, and that it could not deliver the products that they had ordered. The evidence indicated that he did these things while he had in his possession Specialty's customer lists, accounts receivable, and some of Specialty's orders. Sherwood Helms himself testified that Rose indicated that Specialty had been sold and that Rose was in the process of reevaluating which employees were to be retained. We hold that Specialty presented substantial evidence of its claims of interference with business and contractual relations.
The Rusks and Rusken argue that any interference was justified. Justification for interference with contractual or business relations is an affirmative defense, Gross v. LowderRealty, at 597, and "legitimate economic motives and bona fide business competition qualify as justification for intentional interference with a competitor's business," BridgewayCommunications, *Page 408 Inc. v. Trio Broadcasting, Inc., 562 So.2d 222 (Ala. 1990). The Rusks and Rusken argue that they were entitled to inquire concerning the market in Mobile and to verify the amount of business that Joyner claimed Specialty was conducting. The evidence indicates that Rose's actions, however, went further than inquiring into the Mobile market and verifying the amount of Specialty's business; when the evidence is viewed in the light most favorable to Specialty, it indicates that Rose told Specialty's customers that Specialty was going out of business, that it was bankrupt, and that it could not deliver the products that they had ordered. The Rusks and Rusken seem to argue that such statements were justified because they were true. Whether the statements were indeed true and whether even if they were true they constitute justification is a question suitable for jury determination. The trial court erred by entering summary judgment for Gregory Rusk, Bobby Rusk, and Rusken on Specialty's claim for interference with business or contractual relations, and as to that claim the judgment is due to be reversed.
Specialty argues that the trial court erred by entering a summary judgment for both Gregory Rusk and Bobby Rusk individually and Rusken on its claim that those defendants engaged in unfair business practices to reduce the value of Specialty so that they could buy it for less. We have discussed fully the evidence supporting this claim, and we hold that Specialty presented substantial evidence to support it. The trial court erred by entering summary judgment for Gregory Rusk, Bobby Rusk, and Rusken on this claim, and as to it the judgment is due to be reversed.
Specialty argues that the trial court erred by entering summary judgment for Gregory Rusk, Bobby Rusk, Rusken, and Coastal on Specialty's claim for return of equipment or, alternatively, damages for the value of the equipment. Based on the pleadings, this claim seems to be the only claim that Specialty alleges that Coastal is liable for, and it is certainly the only claim for which Specialty presents sufficient evidence against Coastal to withstand summary judgment. Coastal, which took over possession of Specialty's warehouse, admitted that the equipment that Specialty seeks to have returned remained in the warehouse and that that equipment belonged to Specialty. Specialty presented substantial evidence against Coastal to support its claim, and the trial court erred when it entered summary judgment for Coastal on this claim. As to this claim against Coastal, the judgment is due to be reversed. As to the other defendants on this claim, it is due to be affirmed.
Finally, Specialty argues that the trial court erred when it entered summary judgment for Merchants on Specialty's claim alleging breach of a lease contract. As we discussed earlier, viewed in the light most favorable to Specialty, the evidence indicates that Specialty and Merchants had contracted for the lease of a building; that based on Rose's representations to its real estate agent on June 30, 1986, Merchants changed the locks on the leased premises; that Specialty was current in its rental payments and not otherwise in default when Merchants took this action; that Merchants demanded that Specialty pay the next month's rent in advance before it would allow Specialty to enter the premises again. The evidence does not support Merchant's contention that, as a matter of law, Specialty was in default according to the lease because Specialty abandoned the lease or removed furniture from the building. The record does not indicate whether Specialty left the premises, whether Specialty left the premises temporarily because it was locked out, or whether Specialty removed equipment or furniture that the lease stated should not be removed. Accordingly, whether Specialty was in default under the lease agreement is a genuine issue of material fact, suitable for jury determination. Specialty presented substantial evidence of its claim against Merchants, and the trial court erred when it entered summary judgment for Merchants. As to Specialty's claim against Merchants, the judgment is due to be reversed. *Page 409 
The judgment is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES and SHORES, JJ., concur.
HOUSTON, J., concurs in the result.