706 So.2d 766 (1997)
Bonnie GOODWIN
v.
CITY OF FULTONDALE and Daryl Hamilton.
2960843.
Court of Civil Appeals of Alabama.
October 17, 1997.
Rehearing Denied December 5, 1997.
*767 Kearney Dee Hutsler, Birmingham, for appellant.
R. Larry Bradford and J. Paul Sizemore of Bradford & Donahue, P.C., Birmingham, for appellees.
RICHARD L. HOLMES, Retired Appellate Judge.
Bonnie Goodwin (Bonnie) appeals from a summary judgment entered in favor of the City of Fultondale and Daryl Hamilton (Officer Hamilton) on her claims of conversion, trespass, and violation of her civil rights under 42 U.S.C. § 1983. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
At the outset we note that Rule 56, Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where there exists no genuine issue of any material fact and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala. Civ.App.1994).
Once the movant makes a prima facie case, showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
Furthermore, in determining whether substantial evidence exists to defeat a summary judgment motion, the reviewing court must view the evidence in a light most favorable to the nonmoving party. Specialty Container *768 Mfg., Inc. v. Rusken Packaging, Inc., 572 So.2d 403 (Ala.1990).
The evidence, when viewed in a light most favorable to Bonnie, reveals the following: On June 1, 1994, Gordon L. Goodwin, Sr., contacted the Fultondale police department and reported that he was going to take possession of a truck from his sister-in-law, Bonnie. Bonnie's attorney contacted the Fultondale police chief and furnished him the following information: (1) Bonnie was the owner of the truck although it was titled in Goodwin's name; (2) Bonnie had paid all the loan payments, the insurance premiums, and the repairs; (3) a certificate of title is not the only way to prove ownership; (4) the Fultondale police department, by acting on the complaint, would be taking Bonnie's truck by force without the benefit of due process of the law; (5) Goodwin could file for the appropriate remedy in a civil court; and (6) the Fultondale police should not get involved in the civil dispute.
Notwithstanding the call from Bonnie's attorney, the Fultondale police chief dispatched Officer Hamilton to the scene. When Officer Hamilton arrived at the scene, Goodwin was present and provided Officer Hamilton with documents reflecting that the truck was titled and registered in Goodwin's name. Officer Hamilton testified that he informed Bonnie that a NCIC title search had revealed that Goodwin held title to the truck and that Goodwin could obtain an arrest warrant for Bonnie if Bonnie proceeded to drive away in the truck. Officer Hamilton further testified that he informed the parties that their problem involved a civil matter, not a criminal matter, and that they should contact their attorneys. Bonnie denies that Officer Hamilton stated anything about whether the matter was civil or criminal.
In fact, Bonnie's testimony was quite conflicting. Bonnie testified that Officer Hamilton told her that he was dispatched to the scene to effectuate the change of possession. Bonnie further testified that Officer Hamilton told her that if she drove away in the truck, he would stop her, arrest her, and take her to jail. Bonnie stated that while she was at the scene, she showed Officer Hamilton a bankbook reflecting that she had made all the loan payments and a receipt showing that she had paid for the tag. Bonnie stated that she was forced to relinquish her truck keys to Officer Hamilton, who drove the truck to another location and parked it.
In December 1994 Bonnie sued Goodwin; the City of Fultondale; and Officer Hamilton, individually, and in his official capacity. The City of Fultondale and Officer Hamilton filed an answer, asserting the defense of qualified immunity. Thereafter, the City of Fultondale and Officer Hamilton filed a summary judgment motion. The trial court entered a judgment in their favor, finding that both were entitled to qualified immunity. The trial court further certified that judgment as final, pursuant to Rule 54(b), Ala. R. Civ. P. We would note that Goodwin also filed a summary judgment motion, which the trial court denied. Thus, Bonnie's claims against Goodwin are still pending before the trial court. We would further note that Bonnie does not appeal from the trial court's entry of a summary judgment on her trespass claim. Therefore, we will not address that issue on appeal.
Bonnie first contends that the trial court erred in entering a summary judgment in favor of the City of Fultondale and Officer Hamilton on the § 1983 claims because, she says, she presented substantial evidence that the City of Fultondale and Officer Hamilton were not entitled to qualified immunity because their actions violated clearly established constitutional law.
Our supreme court, in Roden v. Wright, 646 So.2d 605, 610 (Ala.1994), noted the following well-settled standard for determining whether a public official is entitled to qualified immunity in actions brought pursuant to § 1983:
"[I]n deciding whether a public official is entitled to qualified immunity in actions brought pursuant to § 1983, the Eleventh Circuit employs the following two-step analysis:
"`1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

*769 "`2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law." Zeigler [v. Jackson], 716 F.2d [847] at 849 [11th Cir.1983]. Accord, I.A. Durbin, Inc. v. Jefferson National Bank, 793 F.2d 1541, 1550 (11th Cir.1986), Flinn v. Gordon, 775 F.2d 1551, 1553 (11th Cir.1985).'

"Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir.1988); see also Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir.1992); Hudgins v. City of Ashburn, 890 F.2d 396 (11th Cir.1989)."
In the instant case, it is undisputed that Officer Hamilton was acting within his discretionary authority as a law enforcement official when he was dispatched to the scene. Thus, the burden shifted to Bonnie to present substantial evidence that Officer Hamilton acted in bad faith.
In essence, Bonnie contends that despite Officer Hamilton's constructive knowledge that she was the true owner of the truck, Officer Hamilton still threatened to arrest her and take her to jail. Bonnie further contends that these threats intimidated her and caused her to relinquish possession of her truck, which, she says, was an interference with her federally protected property rights, as well as an interference with her right to liberty.
"In order to state a cause of action ... under Section 1983, [Bonnie] must show that [she has] asserted a recognized `liberty or property' interest within the purview of the Fourteenth Amendment ... and that [she was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law."
Griffith v. Johnston, 899 F.2d 1427, 1434 (5th Cir.1990) (citations omitted).
The evidence is obviously in conflict as to Officer Hamilton's conduct on the day of the incident. When viewed in a light most favorable to Bonnie, however, it could appear that Officer Hamilton may have acted in bad faith or in a reckless manner in his handling of the incident in question. Thus, this issue must be presented to a jury in order to determine whether Officer Hamilton is entitled to qualified immunity, both in his individual and in his official capacity. Additionally, we would note a jury could find that Officer Hamilton's conduct, as depicted by Bonnie, constituted a deprivation under color of state law of her property rights and her right to liberty.
We next address Bonnie's § 1983 claim against the City of Fultondale. The United States Supreme Court, in Monell v. Dep't of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611, 616 (1978), stated that "local governments... may be sued for constitutional deprivations visited pursuant to governmental `custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." In Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142, 160 (1970), the Supreme Court stated the following concerning the words "custom or usage" for purposes of § 1983: "Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a `custom or usage' with the force of law."
In the instant case, Bonnie contends that the Fultondale police department had a custom and practice of determining ownership of disputed property. The only evidence that Bonnie presented to support this contention was the following testimony by Officer Hamilton:
"Q. Have you ever participated in a change of possession of a vehicle like that before?
"A. Depends on what you mean like that. I've had places where men and women were living together and moved out and somebody will say, that's my vehicle, and it will be titled to them. I state the same thing to them that I stated to Bonnie and to Gordon that day. They work it out between themselves, and the person the vehicle is titled to will take it."
Clearly, the above testimony, alone, is insufficient to establish that Officer Hamilton was *770 acting pursuant to a well-established municipal policy or custom.
In determining whether the City of Fultondale and Officer Hamilton are entitled to qualified immunity from liability under Bonnie's state law claim, this court must apply the same analysis used in step one of the two-step analysis adopted by our supreme court in Roden. Since we have already determined that a jury question has been presented regarding Officer Hamilton's conduct on the day in question, we cannot conclude, as a matter of law, that Officer Hamilton is entitled to qualified immunity on Bonnie's state law claim of conversion.
"`The owner of personalty is entitled to possession thereof. Any unlawful deprivation of or interference with such possession is a tort for which an action lies.' Ala.Code 1975, § 6-5-260." Lightfoot v. Floyd, 667 So.2d 56, 64 (Ala.1995). We conclude that a jury could find that Officer Hamilton's actions on the day in question could have created an interference with Bonnie's ownership interest in the truck.
This holding further supports a finding that the City of Fultondale may not be immune from liability. In other words, if Officer Hamilton is found not to be immune in his individual or in his official capacity, then the City of Fultondale, whose liability is based on the doctrine of respondeat superior, would similarly not be entitled to immunity. See United Steelworkers of America v. O'Neal, 437 So.2d 101 (Ala.1983) (holding that the principal cannot be held liable if the agent is not liable).
Based on the foregoing, we affirm the judgment as to the § 1983 claim against the City of Fultondale. We reverse the judgment as to the state law conversion claim against Officer Hamilton and the City of Fultondale, and we reverse the judgment as to the 42 U.S.C. § 1983 claim against Officer Hamilton. Accordingly, we remand the cause for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I conclude that Officer Hamilton's actions are protected by qualified immunity and that the trial court correctly entered summary judgment for Officer Hamilton; therefore, I must respectfully dissent. Although I agree with Judge Holmes's statement of the applicable law, I disagree with his conclusion that an issue of fact remains as to whether Officer Hamilton "`violated clearly established constitutional law.'" Roden, 646 So.2d at 610. As Judge Holmes states, Bonnie Goodwin and Gordon Goodwin did not have a clear right to undisturbed possession of the automobile at the time Officer Hamilton removed the automobile from her possession.