YATES, Judge.
The plaintiff, Douglas Ray Cannon, appeals from a summary judgment in favor of the defendants, Michelin North America, Inc. (“Michelin”), Wilton Crawford, and Jorge Roa. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
A summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P. “If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to [present substantial evidence creating such an issue].” Hinkle v. Burgreen Contracting Co., 678 So.2d 797, 799 (Ala.Civ.App.1996). “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a summary-judgment motion, a court must view the evidence in a light most favorable to the nonmoving party. Goodwin v. City of Fultondale, 706 So.2d 766 (Ala.Civ.App.1997).
Cannon began working for Uniroyal-Goodrich Tire Company in December 1983 at its Opelika plant. In 1993, Michelin *670 bought the Uniroyal plant; Cannon continued to work in the plant as a technician in the development qualification center. Cannon was promoted to die engineer in 1994. As a die engineer, Cannon was required to operate various types of tire building machines. He was also required to use mobile equipment such as forklifts and tuggers.
In February 1996, while on vacation with his family in Tennessee, Cannon suffered a severe head injury in an ice-skating accident. After returning to Opelika, Cannon was placed in the intensive care unit at East Alabama Medical Center. On April 8, 1996, Dr. Keith Fuller released Cannon to return to work. Cannon was able to work only intermittently, because of headaches, dizziness, and other symptoms. Between February 1996 and November 1996, Cannon worked a total of 33 days.
On November 7, 1996, Cannon was returned to work with no restrictions. Upon Cannon’s returning to work, personnel manager Jorge Roa met with Cannon’s immediate supervisor, Wilton Crawford, and told him that Cannon, to keep his job, had to work 90 consecutive days within a 12-month period from the day he was injured. Crawford told Cannon that if he could work 90 consecutive days before February 6,1997, he would be able to keep his job. Crawford also told Cannon that he could use vacation days when he did not feel able to work. At no time during the 90-day period did anyone inform Cannon that if he performed less than his full duties his days worked would not count toward the 90-day requirement.
Cannon worked through February 7, 1997, meeting the 90-day requirement. He did what he was told during the 90-day period, which included doing less than his full duties. Although the doctor had returned Cannon to work without restrictions, Crawford testified in his deposition that he had placed Cannon on “restricted work from a safety standpoint.” Crawford stated that he did not consider Cannon to be on “light duty,” because there had been no restrictions from the company nurse. Cannon testified in his deposition that if he had been told that doing less than his full duties would result in his termination and the loss of his medical-leave benefits, then he would have performed his full duties.
The evidence indicates that Cannon occasionally would have dizzy spells at work and become disoriented. After the 90-day period had lapsed, Cannon, through a letter from Dr. Camilo Gomez, informed Michelin that he was again going on medical leave. After receiving the letter, Roa informed Crawford that Cannon was to be terminated. Crawford testified that he did not know that working less than full duty disqualified an employee from meeting the 90-day requirement, under Michelin’s medical-leave policy. Roa admitted that if Cannon had performed all the tasks of his job during the 90 days, then Cannon would have been entitled to 26 weeks of short-term disability and his job would have been held open. On February 15, 1997, Cannon was terminated.
In October 1997, Cannon was released back to work by his doctor. At that time, he contacted Roa about returning to work at Michelin. Roa told Cannon that there was no job. Subsequently, Cannon was hired by another company.
Michelin has a medical leave-of-absence policy. Crawford testified that Michelin’s employees are “not allowed to have copies” of the policy, but that “they are allowed to read them any time they wish.” Roa stated in his deposition that it was part of his job to tell employees what was in the policy and how it might affect them. The policy states, in pertinent part:
“If an employee who has been on leave of absence returns to a medical part- *671 time/light duty assignment or to a full-time regular job for less than a period of 90 consecutive calendar days, the 12 month period termination date will still be calculated from the original date. Employees nearing 12 months of Medical Leave of Absence status will be reminded, in writing, of this policy and advised of their benefits at least thirty (30) days prior to the effective date of termination.
[[Image here]]
“If a regular, full-time employee returns to a full-time regular job for a period of 90 consecutive calendar days, the full eligibility of 26 weeks of Short-Term Disability (STD) benefits will be renewed. (Light duty assignments do not constitute full-time, regular job.)”
Cannon sued Michelin, Crawford, and Roa, alleging fraud, fraudulent suppression, and breach of contract. After litigation had begun, Michelin offered Cannon a job, but Cannon rejected the offer because he already had another job. The defendants moved for a summary judgment on all counts. Cannon filed a response addressing only the fraudulent-suppression and breach-of-contract claims. The trial court entered a summary judgment for the defendants on all claims.
To prove fraudulent suppression, the plaintiff must show (1) the existence of an undisclosed material fact; (2) the defendant’s duty to disclose the material fact; (3) the defendant’s concealment or failure to disclose this material fact; (4) that the defendant’s concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result. Locklear Dodge City, Inc., v. Kimbrell, 703 So.2d 303, 306 (Ala.1997).
The trial judge decides, assuming as truth all of the plaintiffs factual assertions, whether those assertions are sufficient to give rise to a legal duty.
“If, even presuming that all of the plaintiffs facts are true, the judge determines that, as a matter of law, no duty was owed, then a summary judgment or a directed verdict is appropriate. If the judge finds that the circumstances as alleged would be enough to create a legal duty, then he should instruct the jury as to what that duty would be if these circumstances did exist. The jury then decides whether those circumstances indeed existed.”
State Farm Fire & Casualty Co. v. Owen, 729 So.2d 834, 840 (Ala.1998). Thus, if the trial judge determines that a duty to disclose exists, then a summary judgment is inappropriate.
Cannon argues that Michelin had a duty to disclose its medical-leave policy. We agree. Michelin employees are not given a copy of the policy and must rely on management to inform them of all the aspects of the policy. Michelin had superi- or knowledge of the policy and had a duty to fully disclose the information. Cannon relied on Crawford’s statement that if Cannon worked 90 consecutive days he would not be terminated. Crawford, Roa, and Michelin failed to inform Cannon that light-duty assignments did not meet the requirement of a full-time job. Cannon was given “restricted work,” even though the doctor had placed no restrictions on his activities. Cannon was fired after completing the 90 consecutive days.
It appears, too, that Michelin violated its own policy when it did not inform Cannon “in writing” of its medical leave-of-absence policy, which states: “Employees nearing 12 months of Medical Leave of Absence status will be reminded, in writing, of this policy and advised of their benefits at least thirty (30) days prior to the effective date of termination.” Under Michelin’s policy, *672 the Ml eligibility of 26 weeks of short-term disability benefits will be renewed if a full-time employee returns to a full-time job for 90 consecutive days. Cannon had no way of knowing that his “restricted work” would not qualify, because he was not given a copy of the policy and he had to rely on the statements of Michelin’s management. Crawford admitted in his deposition that even he himself did not know that working less than full-duty would not qualify.
The summary judgment was inappropriate because there is a fact question as to whether Cannon actually could have performed all the duties of his Ml-time job. Michelin presents evidence indicating that Cannon occasionally had dizzy spells and had to be helped into the plant by coworkers. Cannon’s doctor placed no restrictions on his activities, and Cannon’s testimony indicates that he would have performed all of his full-time duties, even though it would have been difficult.
For Cannon to prevail on his breach-of-contract claim, he must first show that Michelin’s medical-leave policy created a binding contract and that he was not an employee-at-will.
“The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party. Under this doctrine, an employee may be discharged for any reason, good or bad, or even for no reason at all. See Bell v. South Central Bell, 564 So.2d 46 (Ala.1990). While at-will employment is indeed the traditional model, Alabama has, in the relatively recent past, imposed certain limitations on an employer’s right to discharge an employee. Among those limitations is an exception, recognized by this Court, for implied contracts arising out of the use of an employee handbook. In Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), Alabama adopted the position taken by a number of other jurisdictions, that the provisions of an employee handbook can become a binding unilateral contract, thereby altering an employment relationship’s at-will status. Modeled on the leading case of Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn.1983), Hoffman-La Roche represented a departure from the at-will doctrine, but it also recognized that not all employer communications would justify such treatment. Rather, only those employer communications meeting the traditional requirements for the formation of a unilateral contract—an offer, communication, acceptance, and consideration—will bind the parties.”
Ex parte Amoco Fabrics & Fibers Co., 729 So.2d 336, 339 (Ala.1998).
In Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), our supreme court held that certain provisions in an employee handbook modified the employment relationship betweén the company and the employee so as to make the relationship terminable only by compliance with those provisions. There, the “employee-at-will” relationship between the company and the employee was modified by the terms set out in the handbook, and the handbook gave clearly defined procedures for termination. The handbook in Hoffmanr-La Roche .was detailed enough that an employee reading it could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all the procedures set out in the book had been followed.
In the present case, Michelin’s medical-leave policy set out specific guidelines regarding when an employee was granted a medical leave of absence because of a serious condition, disease, or *673 other disability. Michelin’s policy also provided that if a full-time employee worked for 90 consecutive days, the employee would not be terminated and the full eligibility for 26 weeks of short-term disability benefits would be renewed. Cannon relied on the statements made by Crawford that, under the policy, if he worked 90 consecutive days he would not be terminated. Although Michelin’s policy stated that light-duty assignments did not constitute a full-time regular job, neither Crawford nor anyone at Michelin who had knowledge of the policy informed Cannon of this fact. Relying on the offer communicated by Crawford to work for 90 consecutive days to avoid being terminated or losing benefits, Cannon worked for 90 consecutive days. Cannon’s performance supplied the necessary consideration.
Accordingly, we reverse the judgment and remand the case for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, J„ concur.
CRAWLEY and THOMPSON, JJ„ dissent.