829 So.2d 142 (2000)
Steve RAMSAY
v.
GROVE HILL MEMORIAL HOSPITAL AUXILIARY.
2990805.
Court of Civil Appeals of Alabama.
November 17, 2000.
*143 Gilbert L. Fontenot of Fernandez, Ollinger, Combs & Fontenot, L.L.C., Mobile, for appellant.
Bruce N. Wilson of Wilson & Drinkard, Grove Hill, for appellee.
YATES, Judge.
Steve Ramsay appeals from a summary judgment in favor of the Grove Hill Memorial Hospital Auxiliary ("the Auxiliary").
Before completing his medical training in 1993, and while a medical student at the University of South Alabama in Mobile, Ramsay had worked a six-week internship with the Clarke County Health Care Authority (hereinafter referred to as "the Hospital"). Ramsay alleges that a member of the Hospital's governing board promised Ramsay that if he would come to Grove Hill to practice medicine for three years the Hospital would pay the $27,000 he owed in student loans.
The Auxiliary is an unincorporated association organized to promote and advance the Hospital through ways approved by the Hospital's governing board and to raise funds for the Hospital. The Hospital requested the Auxiliary to pay to Ramsay $5,000 per year for three years to defray the cost of Ramsay's three-year residency at the University of South Alabama. The Auxiliary granted the request, as evidenced by the minutes of its meeting, because another doctor was "desperately needed" at Grove Hill.
On November 21, 1991, Ramsay and the Auxiliary entered into an agreement, which provided, in pertinent part:
"The Auxiliary will provide scholarship funds to Ramsay in the amount of Fifteen Thousand, ($15,000) Dollars, payable in three installments of $5,000, payable on November 1, 1991, November 1, 1992, and November 1, 1993, to enable him to obtain his Family Practice Residency at the University of South Alabama.

*144 "The Auxiliary agrees that the scholarship funds herein provided are to become a grant to Ramsay after he has practiced medicine as a medical doctor in the Grove Hill Medical Clinic[[1]] for a minimum of three years following his graduation from Medical School.
"If for any reason Ramsay discontinues his medical training before graduation, or does not work in the Grove Hill Medical Clinic for the full term of three years following completion of his training, the funds advanced will be considered a loan, and Ramsay agrees to pay back the amount received, with interest from date of receipt at the rate of 7% per annum, over a one-year period following: a) His discontinuance of training; b) the completion of his training; or c) the date of discontinuance of his work in the Grove Hill Medical Clinic if Ramsay discontinues work before the end of three years.
"Should unforeseen health or other hazards beyond the control of Ramsay prevent completion of his medical training, or prevent completion of this three-year obligation to serve as a medical doctor in the Grove Hill Medical Clinic, the amount to be repaid by Ramsay to the Auxiliary shall be negotiated between the Auxiliary and Ramsay."
On December 3, 1993, Ramsay signed an employment agreement and in January 1994 he began working, initially part-time, at the Grove Hill Medical Clinic and he began working at the Hospital in July 1994. He quit working for the clinic and the Hospital in January 1996, after the Hospital refused to pay his student loans, as he alleged it had promised to do.
The Auxiliary sued Ramsay for the $15,000 it had paid to him while he completed his medical training, alleging a breach of contract. Ramsay answered, denying the allegations, and filed a third-party complaint against the Hospital, alleging that he had had an oral contract with the Hospital whereby in exchange for his coming to Grove Hill to practice medicine the Hospital would pay his student loans and that it had breached the contract.[2]
On January 31, 2000, the Auxiliary moved for a summary judgment, asking the court to find Ramsay liable under the 1991 contract. In opposition, Ramsay argued that the contract was ambiguous and that there was, therefore, a fact question as to whether full repayment was required of him under the contract. The trial court granted the Auxiliary's motion for a summary judgment and awarded the full value of the contract ($15,000), plus interest, totalling $22,519.99. Ramsay appeals.
A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. "If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the *145 nonmovant to [present substantial evidence creating such an issue]." Hinkle v. Burgreen Contracting Co., 678 So.2d 797, 799 (Ala.Civ.App.1996). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a summary-judgment motion, the reviewing court must view the evidence in a light most favorable to the nonmoving party. Goodwin v. City of Fultondale, 706 So.2d 766 (Ala.Civ.App.1997).
In the present case, the plaintiff asked for and was granted a summary judgment. On a motion for an offensive summary judgment, that is, one on behalf of the plaintiff, the plaintiff must conclusively prove every element of his claim. In contrast, on a summary-judgment motion by the defendant, the defendant need only negate one element of the plaintiff's claim in order to be entitled to a summary judgment. Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999).
In Raymond v. Amason, 565 So.2d 614 (Ala.1990), the executrix and beneficiaries under a will presented the will to probate. Several relatives contested the validity of the will. The executrix moved for a summary judgment, supporting her motion by the will, answers to interrogatories, and depositions of the relatives who had contested the will. The trial court entered a summary judgment for the executrix; our supreme court affirmed, holding that the executrix had made a prima facie case showing that the will was valid and that "it was incumbent upon the contestants to come forward with sufficient evidence to create a triable issue of fact. They did not do so." 565 So.2d at 616.
In Griffin v. American Bank, 628 So.2d 540 (Ala.1993), the bank sued on a promissory note. Our supreme court affirmed a summary judgment for the bank, because the defendant had failed to present any evidence in opposition to the motion for summary judgment.
A plaintiff can establish a breach-of-contract claim by showing the existence of a valid contract binding upon the parties in the action, the plaintiff's performance under the contract, the defendant's nonperformance, and damage. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala.1999).
Ramsay argues that the contract with the Auxiliary is ambiguous and that there is a question of fact as to whether he suffered a "hazard beyond [his] control." He contends that when the Hospital refused to pay his student loans, he quit because repayment of the student loans was central to his continued employment. Ramsay argues that the term "hazard" is ambiguous, because the contract provides no guidance as to its interpretation. He contends that the "detrimental experience" of the Hospital's not paying his student loans was a condition not of his making, which frustrated his ability to complete his employment obligation to the Hospital. Ramsay further argues that he should owe only a portion of the loan. We note that Ramsay does not argue that he owes nothing under the contract.
The Auxiliary contends that the contract required Ramsay to practice medicine a minimum of three years at the Hospital in order for the $15,000 he received to be considered a grant and not a loan. It argues that any alleged oral agreement with the Hospital that the Hospital would repay his student loans in no way prevented Ramsay from performing in accordance with the terms of the contract with the Auxiliary. The Auxiliary argues that the *146 clear intent of this contract was to entice medical students to make a certain time commitment for the practice of medicine in this rural community, a time of sufficient length to justify the Auxiliary's investment in the student's residency. The Auxiliary further argues that the contract clearly and unambiguously provides that only under extenuating circumstances where a scholarship recipient is prevented by health or hazard "beyond his control" from performing under the contract, may the Auxiliary negotiate for less than full payment based on partial performance.
There is no dispute that a valid contract existed between Ramsay and the Auxiliary. There is no dispute that the Auxiliary performed under the contract, because the Auxiliary paid Ramsay $5,000 a year in 1991, 1992, and 1993 in order for Ramsay to pay for his residency at the University of South Alabama. There is no dispute that Ramsay failed to fully perform under the contract. Ramsay does not dispute that he did not complete the three years of practice, following the completion of his residency, at the Hospital in accordance with the terms of the contract. Instead, Ramsay argues that his partial performance, i.e., working at the Hospital from January 1994 to January 1996, entitled the Auxiliary to only a partial repayment as damages.
In opposition to the motion for summary judgment, Ramsay presented minutes from an Auxiliary meeting in 1984, where the Auxiliary had allowed another doctor to terminate his contract with the Auxiliary six months early and had released him without any demand for repayment. The doctor had been struggling financially to meet the expenses of his practice, and his wife had been offered a nursing job in Birmingham. The Auxiliary stated that the doctor's "early departure" was not caused by any default on his part. However, the record contains no copy of the contract between the Auxiliary and this other doctor, and there is not even a bare allegation that the contract with this other doctor was similar to Ramsay's contract.
Based on the foregoing, we conclude that Ramsay failed to present evidence creating a triable issue of material fact. Therefore, we affirm the judgment of the trial court.
AFFIRMED.
ROBERTSON, P.J., and MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I would reverse the summary judgment in favor of the Auxiliary because I think the contract provision (allowing negotiated repayment by Ramsay if "unforeseen ... hazards beyond [his] control" prevent him from completing his three-year obligation) is ambiguous.
NOTES
[1] The Grove Hill Medical Clinic, among other things, provides physicians to staff the Hospital's emergency room.
[2] The Hospital moved for a summary judgment on the third-party complaint; the trial court granted the motion and entered a judgment for the Hospital. Ramsay appealed. We affirmed the trial court's judgment without an opinion. Ramsay v. Clarke County Health Care Auth., [Ms. 2981145, November 19, 1999] 789 So.2d 254 (Ala.Civ.App.1999) (table). Our supreme court has granted certiorari review in that case (docket no. 1990758).