829 So.2d 146 (2002)
Ex parte Steve RAMSAY.
(In re Steve Ramsay v. Clarke County Health Care Authority).
Ex parte Steve Ramsay.
(In re Steve Ramsay v. Grove Hill Memorial Hospital Auxiliary).
1990758 and 1000454.
Supreme Court of Alabama.
March 8, 2002.
*148 Gilbert L. Fontenot of Fernandez, Ollinger, Combs & Fontenot, L.L.C., Mobile, for petitioner.
E. Watson Smith and Tracy P. Turner of Johnstone, Adams, Bailey, Gordon & Harris, L.L.C., Mobile, for respondent *149 Clarke County Health Care Authority d/b/a Grove Hill Memorial Hospital.
Bruce N. Wilson of Wilson & Drinkard, Grove Hill, for respondent Grove Hill Memorial Hospital Auxiliary.
JOHNSTONE, Justice.
This Court has granted two petitions for certiorari review of two respective judgments of the Court of Civil Appeals affirming two respective summary judgments entered by the trial court on distinct contract claims in the same civil action. We affirm.
The parties are the "Hospital,"[1] its "Auxiliary,"[2] and Dr. Steve Ramsay. An important entity, not a party, is the "Clinic,"[3] which supplied physicians to the Hospital. The Hospital, its Auxiliary, and the Clinic, which at all pertinent times have cooperated with each other, are located in Grove Hill.
The Auxiliary sued Dr. Ramsay in contract for repayment of "scholarship" monies it had paid him while he was a medical resident on the condition, violated by Dr. Ramsay, that he practice medicine at the Clinic for a minimum of three years. Dr. Ramsay's only defense on the merits was that the Auxiliary had breached its duty under an escape clause in the scholarship contract, which required the Auxiliary to negotiate for repayment of a lesser sum if an "unforeseen hazard" beyond Dr. Ramsay's control prevented him from completing his three-year obligation. In due course, the Auxiliary moved for a summary judgment in its own favor on its own claim against Dr. Ramsay. The trial court entered a summary judgment in favor of the Auxiliary for recovery of all of the scholarship monies plus interest, and the Court of Civil Appeals affirmed the summary judgment. Ramsay v. Grove Hill Mem'l Hosp. Auxiliary, 829 So.2d 142 (Ala.Civ.App.2000). We affirm the judgment of the Court of Civil Appeals, but on a rationale that pretermits the final rationale applied by that court.
After the Auxiliary sued Dr. Ramsay, he sued the Hospital by filing a third-party claim against it. Dr. Ramsay alleged that the Hospital had breached an oral contract (distinct from the scholarship contract between Dr. Ramsay and the Auxiliary) to repay his medical school student loans. The Hospital denied the existence of any such contract and asserted the affirmative defense of the Statute of Frauds, § 8-9-2(1) and (3), Ala.Code 1975. In due course, the Hospital moved for a summary judgment, grounded on the Statute of Frauds, on Dr. Ramsay's claim against the Hospital. The trial court entered a summary judgment, and the Court of Civil Appeals affirmed it without an opinion. Ramsay v. Clarke County Health Care Authority, 789 So.2d 254 (Ala.Civ.App. 1999) (table). We affirm the judgment of the Court of Civil Appeals.

Common Facts
Because Grove Hill needed medical doctors, the Auxiliary offered Dr. Ramsay a "scholarship" while he was still a medical resident at the University of South Alabama, in Mobile. He and the Auxiliary *150 entered into a scholarship contract, which provides:
"THIS AGREEMENT, Made and entered into on this the 12th day of November 1991, by and between the GROVE HILL HOSPITAL AUXILIARY, party of the first part, hereinafter called the "Auxiliary", and Dr. Steve Ramsay, party of the second part, hereinafter called Ramsay, WITNESSETH:
"That for and in consideration of the mutual covenants herein contained, the parties hereto have agreed with each other as follows:
"1) The Auxiliary will provide scholarship funds to Ramsay in the amount of Fifteen Thousand ($15,000.00) Dollars, payable in three installments of $5,000.00, payable on November 1, 1991, November 1, 1992, and November 1, 1993, to enable him to obtain his Family Practice Residency at the University of South Alabama.
"2) The Auxiliary agrees that the scholarship funds herein provided are to become a grant to Ramsay after he has practiced medicine as a medical doctor in the Grove Hill Medical Clinic for a minimum of three years following his graduation from Medical School.
"3) If for any reason Ramsay discontinues his medical training before graduation, or does not work in the Grove Hill Medical Clinic for the full term of three years following the completion of this training, the funds advanced will be considered a loan, and Ramsay agrees to pay back the amount received, with interest from date of receipt at the rate of 7% per annum, over a one-year period following: a) his discontinuance of training, b) the completion of his training, or c) the date of discontinuance of his work in the Grove Hill Medical Clinic if Ramsay discontinues work before the end of three years.
"4) Should unforeseen health or other hazards beyond the control of Ramsay prevent completion of his medical training, or prevent completion of his three-year obligation to serve as a medical doctor in the Grove Hill Medical Clinic, the amount to be repaid by Ramsay to the Auxiliary shall be negotiated between the Auxiliary and Ramsay."
(C.R.3-4.) (Emphasis added.) The Auxiliary timely paid Dr. Ramsay all three $5,000 annual installments. Dr. Ramsay contends that, before and during this same three-year period, the Hospital promised him that "if Ramsay would come and practice medicine in Grove Hill, Alabama, [the Hospital] would see to the repayment of Ramsay's various student loans he had incurred for medical school" (Ramsay's brief, p. 4), or, in other words by Dr. Ramsay, "would repay his medical school student loans," (Ramsay's brief, p. 6).
The Hospital denies making such a promise. The explanation by the Hospital is:
"Clarke County Health Care Authority [(the Hospital) ] agreed to work with Dr. Ramsay to secure a governmental forgiveness to his medical school loans. This program required Dr. Ramsay to commit to serve a three year period in the rural Grove Hill area. However, Dr. Ramsay failed to execute the necessary application to participate in the federal program. At no time did the Clarke County Heath Care Authority ever present to Dr. Ramsay that it or Grove Hill Memorial Hospital would directly pay or repay any of his student loan indebtedness. While the loan forgiveness application was pending with Dr. Ramsay, two payments were made to him, which ostensibly were for him to pay his student loans. However, once he refused to execute the application for the loan forgiveness program, no other payments *151 in any form were ever made for this purpose.
"Check No. 006699 in the amount of $601.00, dated September 7, 1994, and Check No. 006958 in the amount of 386.13, dated October 21, 1994, ... were forwarded to Dr. Ramsay as payment for use to pay his student loans in the interim period while he was executing the Federal Loan Forgiveness Program Application. However, once Dr. Ramsay flatly refused to execute the Loan Forgiveness Program Application, which was the only method ever put forward to him by any representative of the Authority or GHMH[[4]] as how he could have his student loans paid or forgiven, no further payments of any kind were made which could in any way be classified as for his use to pay his student loans."
About two months after the Auxiliary paid Dr. Ramsay the third and last $5,000 installment due under the scholarship contract, he began practicing medicine at the Clinic in Grove Hill. He practiced there part-time for about six months. Then he relocated his family to Grove Hill and began full-time practice at the Clinic. He practiced full-time there for only 18 months. Thus, the total duration of his practice there, part-time and full-time, was only about two years.
A couple of months after Dr. Ramsay relocated his family to Grove Hill and began his full-time practice at the Clinic, the Hospital paid $601 toward Dr. Ramsay's $27,000 student loan debt. The next month, the Hospital paid another $386.13 toward the debt. During the next 16 months of Dr. Ramsay's full-time practice at the Clinic, the Hospital paid no more toward his student loans, even though he delivered his student loan coupon books to the Hospital and urged it to make the payments. The Hospital offered only to assist Dr. Ramsay in obtaining a federal grant to pay the loans. Dr. Ramsay refused this offer because he did not trust the federal government.
Dr. Ramsay assigns the failure or refusal of the Hospital to pay the balance of his student loans as the reason for his quitting his practice at the Clinic before he completed his three-year obligation there under his scholarship contract with the Auxiliary. After he quit, he initiated negotiations with the Auxiliary to repay it less than the full principal of and interest on the $15,000 in scholarship payments, but the Auxiliary rebuffed his effort to negotiate.

The Auxiliary v. Ramsay

(case no. 1000454)
This refusal by the Auxiliary to negotiate is Dr. Ramsay's only defense on the merits of the claim by the Auxiliary for the repayment of the scholarship monies. Dr. Ramsay does not blame the Auxiliary for the failure or refusal by the Hospital to pay his student loans, and Dr. Ramsay does not claim any failure of consideration for his obligation to the Auxiliary.
Dr. Ramsay contends that the Auxiliary was relegated to negotiation for partial repayment by the escape clause in the scholarship contract:
"Should unforeseen ... hazards beyond the control of Ramsay ... prevent completion of his three-year obligation to serve as a medical doctor in the Grove Hill Medical Clinic, the amount to be repaid by Ramsay to the Auxiliary shall be negotiated between the Auxiliary and Ramsay." *152 Dr. Ramsay contends that the breach by the Auxiliary of its obligation to negotiate bars it from enforcing his obligation to repay.
The Auxiliary, however, contends that it is entitled to a judgment as a matter of law because the nonpayment of Dr. Ramsay's student loans by the Hospital does not constitute an "unforeseen ... hazard" as contemplated by the escape clause and, even if the nonpayment did constitute an "unforeseen hazard," it did not "prevent completion of his three-year obligation," as contemplated by the escape clause. In response, Dr. Ramsay argues that his interpretation of "unforeseen hazard" would include the nonpayment of his loans by the Hospital and that this ambiguity in the escape clause creates a genuine issue of material fact, which invalidates the summary judgment.
To decide the claim of the Auxiliary against Dr. Ramsay for recovery of the scholarship monies, however, this Court need not address whether the term "unforeseen hazard" is an ambiguity that could mean the nonpayment of Dr. Ramsay's student loans by the Hospital. Even if the nonpayment were to constitute an "unforeseen hazard," the record lacks substantial evidence that the nonpayment "prevented completion of [Dr. Ramsay's] three-year obligation." Therefore, the Auxiliary never owed a duty to negotiate toward partial repayment.
The opinion of the Court of Civil Appeals in this case correctly observes:
"There is no dispute that a valid contract existed between Ramsay and the Auxiliary. There is no dispute that the Auxiliary performed under the contract, because the Auxiliary paid Ramsay $5,000 a year in 1991, 1992, and 1993 in order for Ramsay to pay for his residency at the University of South Alabama. There is no dispute that Ramsay failed to fully perform under the contract. Ramsay does not dispute that he did not complete the three years of practice, following the completion of his residency, at the Hospital in accordance with the terms of the contract."
Ramsay v. Grove Hill Mem'l Hosp. Auxiliary, 829 So.2d at 146. Rather, Dr. Ramsay invokes the escape clause to avoid the otherwise indisputable claim by the Auxiliary. Therefore his defense is an affirmative defense. See Rule 8(c), Ala. R. Civ. P.; and City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 750 (Ala. 1998) ("An `affirmative defense' is defined as a `matter asserted by [the] defendant which, assuming the complaint to be true, constitutes a defense to it.' Black's Law Dictionary (6th ed.1990)"). The proponent of an affirmative defense "bears the burden of proving the essential elements of his affirmative defenses." Ex parte Blue Cross & Blue Shield of Alabama, 773 So.2d 475, 478 (Ala.2000); and see Ely v. Pace, 139 Ala. 293, 298, 35 So. 877, 878 (1904) ("Ei incumbit probatio qui dicit.").
The terms of the escape clause condition the obligation of the Auxiliary to negotiate on, first, the happening of an "unforeseen hazard" and, second, a preventive causal relation between that "unforeseen hazard" and Dr. Ramsay's noncompletion of his three-year obligation. Both conditions constitute essential elements of Dr. Ramsay's defense, which he bore the burden to establish in order, in turn, to establish a duty on the Auxiliary to negotiate toward reduced repayment of the scholarship monies.
In the case before us, the Auxiliary has filed "a motion for an offensive summary judgment, that is, one on behalf of the plaintiff" on its own claim. Ramsay v. Grove Hill Mem'l Hosp. Auxiliary, 829 So.2d at 145. Our Court of Civil Appeals *153 has correctly observed in its opinion in this case:
"A summary judgment is appropriate `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. `If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to [present substantial evidence creating such an issue].' Hinkle v. Burgreen Contracting Co., 678 So.2d 797, 799 (Ala.Civ.App. 1996). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a summary-judgment motion, the reviewing court must view the evidence in a light most favorable to the nonmoving party. Goodwin v. City of Fultondale, 706 So.2d 766 (Ala.Civ.App.1997).
"In the present case, the plaintiff asked for and was granted a summary judgment. On a motion for an offensive summary judgment, that is, one on behalf of the plaintiff, the plaintiff must conclusively prove every element of his claim."
Ramsay v. Grove Hill Mem'l Hosp. Auxiliary, 829 So.2d at 144-45. In submitting undisputed evidence establishing all of the essential elements of the claim for repayment of the scholarship monies, the Auxiliary made its "prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." Id. Therefore the burden shifted to Dr. Ramsay to create a genuine issue of material fact by establishing his escape-clause affirmative defense, including all of its essential elements, including a preventive causal relation between the nonpayment of his student loans by the Hospital and his quitting his practice of medicine at the Clinic in Grove Hill. To withstand the motion of the Auxiliary for summary judgment, Dr. Ramsay needed to submit substantial evidence of this preventive causal relation as well as substantial evidence of the other essential elements of his escape-clause affirmative defense.
Dr. Ramsay failed to submit substantial evidence that the nonpayment of the student loans "prevent[ed] completion of his three-year obligation to serve as a medical doctor in the Grove Hill Medical Clinic," as contemplated by the escape clause. He submitted no substantial evidence of economic necessity coupled with better opportunity and no substantial evidence of any other kind of cause that arguably would have forced him to quit his practice at the Clinic. Rather, Dr. Ramsay relies on an absence of evidence to the contrary: "There is no evidence in the record that [Dr.] Ramsay terminated his employment for a reason other than the failure of the Authority to repay his student loans (C. 338, lines 11.8-16)." (Dr. Ramsay's brief in Ramsay v. The Hospital, case no. 1990758, p. 9.) The absence of evidence of nonexistence of a preventive causal relation does not constitute substantial evidence of the existence of a preventive causal relation. The absence of evidence of nonexistence, coupled with the absence of substantial evidence of existence, simply leaves an evidentiary void and does not carry Dr. Ramsay's burden to create a genuine issue of material fact to withstand the proved offensive motion of the Auxiliary for a summary judgment in its favor on *154 its claim for repayment of the scholarship monies. Therefore, the trial court correctly entered a summary judgment in favor of the Auxiliary on its claim, and the Court of Civil Appeals correctly affirmed it.

Ramsay v. The Hospital

(case no. 1990758)
Dr. Ramsay sued the Hospital for breach of an alleged oral contract to pay his $27,000 in student loans in return for his practicing medicine in Grove Hill. Dr. Ramsay himself is unsure of the terms of the oral contract he alleges. He testified that his own obligation under this alleged oral contract with the Hospital, as distinguished from his obligation under his written scholarship contract with the Auxiliary, was to practice medicine in Grove Hill for "two or three years." He did not testify that his working six months part-time and 18 months full-time at the Clinic fulfilled his obligation under his alleged oral contract with the Hospital. Likewise, Dr. Ramsay is unsure of the time allotted to the Hospital to pay his student loans under his alleged oral contract. For this term too he testified "two or three years."
Among its grounds for defensive summary judgment, the Hospital invokes the Statute of Frauds, § 8-9-2(1) and (3):
"In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
"(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof;
". . . .
"(3) Every special promise to answer for the debt, default or miscarriage of another."
The Hospital also denies the existence of the oral contract. Even if the Hospital admitted the existence of the alleged oral contract, such an admission would not prevent the Statute of Frauds from voiding the contract if the contract meets the criteria of the statute. Durham v. Harbin, 530 So.2d 208 (Ala.1988); Pate v. Billy Boyd Realty & Constr., Inc., 699 So.2d 186 (Ala. Civ.App.1997). A fortiori, evidence less than an admission of the existence of the alleged oral contract, such as the two small payments made by the Hospital toward Dr. Ramsay's student loans, will not save the alleged oral contract from the operation of the Statute of Frauds. See also Conoly v. Harrell, 182 Ala. 243, 62 So. 511 (1913), and Scoggin v. Blackwell, 36 Ala. 351 (1860), for the proposition that a plaintiff's having received part performance from a defendant (as Dr. Ramsay has received the two loan payments from the Hospital in this case) does not prevent the Statute of Frauds from voiding the defendant's remaining obligation.
We must, nonetheless, determine whether the alleged oral contract in this case meets the criteria of either subsection (1) or subsection (3) of § 8-9-2, the Statute of Frauds, already quoted. We will address the subsections in inverse order. We preface our analyses by observing that, because the Statute of Frauds is an affirmative defense, Rule 8(c), Ala. R. Civ. P., the defendant invoking it bears the burden of proving that the contract meets the stated criteria of the statute. Ex parte Blue Cross & Blue Shield, supra; and Ely v. Pace, supra.
Subsection (3) applies to "[e]very special promise to answer for the debt ... of another." Its own text limits its application to a promise made to a promisee other than the debtor himself, who is called "another," obviously not the promisee. *155 This court has specifically held that § 8-9-2(3) does not apply to a "promise made [directly] to a debtor whereby the promisor undertakes to discharge the debt." Stewart v. State Farm Mut. Auto. Ins. Co., 605 So.2d 1214, 1216 (Ala.1992).
If Dr. Ramsay's testimony be true, the Hospital made its promise directly to the debtor, Dr. Ramsay himself, to pay his student loans. Therefore, the promise does not meet the criteria of § 8-9-2(3), and that subsection does not void the oral contract, does not provide the Hospital a defense, and does not justify the summary judgment entered by the trial court in favor of the Hospital and against Dr. Ramsay, even though the trial court mistakenly held otherwise.
We will, however, affirm a summary judgment if it is right on any ground developed in, and supported by, the record. Ex parte Ryals, 773 So.2d 1011 (Ala. 2000); Environmental Sys., Inc. v. Rexham Corp., 624 So.2d 1379 (Ala.1993); and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). Subsection (1) of § 8-9-2, which applies to "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof," does void the alleged oral contract and does legitimize the summary judgment entered by the trial court.
The oral contract, according to its only proponent, Dr. Ramsay, required "two or three years" of performance by Dr. Ramsay himself and allowed "two or three years" for the performance by the Hospital. Thus, the contract doubly met the criterion of § 8-9-2(1).
Dr. Ramsay seeks to avoid the Statute of Frauds defense by invoking, first, an exception to the Statute of Frauds and, second, an estoppel. These responses to the Statute of Frauds defense are "matters in avoidance," which, like affirmative defenses, must be proved by the proponent. Patterson v. First Nat'l Bank of Huntsville, 47 Ala.App. 98, 100, 251 So.2d 230, 232 (1971); see Rule 8(c), Ala. R. Civ. P.; Ex parte Blue Cross & Blue Shield, supra; and Ely v. Pace, supra. The plaintiff, Dr. Ramsay in this case, bears the burden of proving such matters in avoidance of the Statute of Frauds when, as here, the alleged oral contract meets the express criteria of the statute. Patterson, supra.
The claimed exception is that the Statute of Frauds voids only executory contracts, not executed contracts. Fowler v. Oliver, 540 So.2d 54, 55 (Ala.1989); Scott v. Southern Coach & Body Co., 280 Ala. 670, 673, 197 So.2d 775, 776 (1967). A contract is executory if neither party has fully performed his obligation to the other party. South Carolina Cotton Growers' Co-op. Ass'n v. Weil, 220 Ala. 568, 126 So. 637 (1929). "[T]he partial performance of a contract, void under the statute of frauds, does not take it from under the influence of the statute, so as to permit a recovery under the contract for any part of the contract remaining executory." Farrow v. Burns, 18 Ala.App. 350, 351, 92 So. 236, 237 (1921) (citing Conoly v. Harrell, supra; and Scoggin v. Blackwell, supra). A contract is executed, and not voided by the Statute of Frauds, if the plaintiff has fully performed his obligation to the defendant and sues the defendant to obtain the defendant's performance or the completion of the defendant's performance. Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424 (Ala.1989); Fowler v. Oliver, supra; and Scott v. Southern Coach & Body Co., supra.
Dr. Ramsay contends that he has fully performed his obligation to the Hospital and has thereby converted the oral contract into an executed contract not subject to the Statute of Frauds defense. The *156 record, however, does not contain substantial evidence that Dr. Ramsay did, in fact, fully perform the obligation he himself testified he owed the Hospital in return for its promise to pay his student loans. He admitted in his deposition that his obligation to the Hospital under his alleged oral contract was to practice medicine in Grove Hill for "two or three years." The significance of this testimony is that he did not, and apparently could not, swear that the duration of his obligation was only two years and he did affirmatively admit under oath that his obligation could have been as much as three years. The duration of his obligation under his collateral contract with the Auxiliary, the scholarship contract, entered into by the Auxiliary in its effort to provide doctors to its Hospital, was expressly three years. As we have already recited, Dr. Ramsay did not testify by deposition or otherwise that he had fulfilled his obligation to the Hospital under his alleged oral contract. In the context of this record, Dr. Ramsay's testimony that the duration of his oral contract obligation to the Hospital was "two or three years" is not substantial evidence ("evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved," West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)), that the duration was only two years. At best for Dr. Ramsay, a fact-finder could only speculate to decide between the alternatives of two years and three years. Therefore, Dr. Ramsay's two years of part-time and full-time practice at the Clinic cannot be deemed to have fulfilled the obligation completely. Accordingly, the executed contract exception to the Statute of Frauds does not save Dr. Ramsay's claim against the Hospital from the Statute of Frauds defense or invalidate the summary judgment entered in favor of the Hospital. Conoly v. Harrell, supra; and Scoggin v. Blackwell, supra. See also Clanton v. Scruggs, 95 Ala. 279, 282, 10 So. 757, 758 (1892): "One party to an invalid executory agreement is not entitled to hold the other party to the agreement just as if it had been originally valid, because the latter has received the benefit of a part performance by the former."
Finally, Dr. Ramsay cites Dean v. Myers, 466 So.2d 952 (Ala.1985), in support of his contention that the Hospital is estopped to invoke the Statute of Frauds. Dean does not clearly articulate the legal principles which produce its conclusion. The one legal principle recited in the discussion of the Statute of Frauds in Dean depends on a condition the record does not establish for Dr. Ramsay:
"This Court has held that while a contract within the Statute of Frauds may not be made effectual by estoppel merely because the promisee has acted on it and the promisor has not performed, acceptance of the benefits by the promisor may give rise to estoppel, particularly if the promisee has fully performed."
Dean, 466 So.2d at 955 (citing Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974), on appeal after remand, 336 So.2d 148 (Ala.1976))(emphasis added). This theory of estoppel merely echoes the executed contract exception to the Statute of Frauds, the same exception that, as we have already explained, is unavailable to Dr. Ramsay because the record lacks substantial evidence that Dr. Ramsay "fully performed."
The primary rationale of Dean seems to be that the defendant's convoluted and actively dishonest manipulations supported an inference that he entered the contract with fraudulent intent, which estopped him from invoking the Statute of Frauds. The *157 Dean rationale is fact-intensive, and the facts are not significantly analogous to Dr. Ramsay's case. The record now before us does not support an inference of fraudulent intent by the Hospital. Therefore the record lacks substantial evidence to apply the Dean estoppel against the Hospital to avoid its Statute of Frauds defense or to invalidate the summary judgment entered in favor of the Hospital on Dr. Ramsay's oral contract claim.
In this case no injustice is wrought by the Statute of Frauds. Among its purposes is protection against allegations of protracted, ill-defined oral obligations, like Dr. Ramsay's allegations in this case. The oral contract alleged by Dr. Ramsay is among the very types that should be written, not just through each party's ordinarily prudent protection of his own interests but also through each party's common consideration of the other party's interests, if the alleged agreement will make a significant difference to either party.

Conclusion
The judgment of the Court of Civil Appeals in The Auxiliary v. Ramsay, case no. 1000454, is due to be affirmed. Likewise, the judgment of that court in Ramsay v. The Hospital, case no. 1990758, is due to be affirmed.
1990758AFFIRMED.
1000454AFFIRMED.
HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.
MOORE, C.J., concurs in the result.
LYONS, Justice (concurring specially).
The majority opinion correctly affirms the summary judgment in favor of Grove Hill Memorial Hospital Auxiliary and against Dr. Steve Ramsay on the Auxiliary's claim against Dr. Ramsay for his failure to adduce evidence in support of excused performance. See Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999) ("`The manner in which the movant's burden of production is met depends upon which party has the burden of proof... at trial.'"), quoting with approval Justice Houston's special concurrence in Berner v. Caldwell, 543 So.2d 686, 691 (Ala. 1989). Here, the Auxiliary adequately shouldered its burden as to all matters as to which it had the burden of proof at trial. Dr. Ramsay failed to respond to the motion for a summary judgment by adducing evidence as to which he had the burden of proof at trial.
Likewise, the majority, in affirming the summary judgment in favor of Grove Hill Memorial Hospital on Dr. Ramsay's claim against it, correctly imposed on Dr. Ramsay the consequences of his failure to offer evidence to establish a contract subject to the affirmative defense of the Statute of Frauds when a contract is incapable of being performed in one year (§ 8-9-2(1), Ala.Code 1975) and his failure to offer evidence of having executed the contract. On these issues, Dr. Ramsay had the burden of proof at trial and therefore had the burden of creating a genuine issue of material fact so as to defeat the summary judgment. General Motors, supra.
I agree with the majority's rejection of the doctrine of estoppel. This case is not the first occasion to deal with the effect of overly broad language in Dean v. Myers, 466 So.2d 952 (Ala.1985). See Durham v. Harbin, 530 So.2d 208, 213-14 (Ala.1988).
NOTES
[1] The Hospital, incorporated under the name "The Clarke County Health Care Authority," does business as "Grove Hill Memorial Hospital."
[2] The Auxiliary is an unincorporated association operating under the name "Grove Hill Memorial Hospital Auxiliary." While the Auxiliary promotes the welfare of the Hospital, it is a separate entity from the Hospital. (Auxiliary Bylaws.)
[3] The Clinic is a professional corporation doing business as "Grove Hill Memorial Clinic." The Clinic is engaged in the practice of family medicine.
[4] The "Authority" and "GHMH" are the same entitythe Hospital. The Authority does business as Grove Hill Memorial Hospital.