[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14314
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00975-GMB

MANDY POWRZANAS,

Plaintiff-Counter Defendant-Appellant,

versus

JONES UTILITY AND CONTRACTING CO., INC.,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 30, 2020)

Before WILSON, ANDERSON, and ED CARNES, Circuit Judges.

PER CURIAM:

Mandy Powrzanas worked for her father at Jones Utility and Contracting Co., Inc. for nearly ten turbulent years. In the last year of her employment, she was diagnosed with fibromyalgia and eventually resigned. She filed a lawsuit against Jones Utility alleging discrimination and retaliation under the American with Disabilities Act (ADA).

Jones Utility counterclaimed for breach of contract, conversion, and breach of fiduciary duty. Powrzanas appeals the district court's grant of summary judgment to Jones Utility on her ADA claims.[1] She also appeals the denial of her motion for sanctions against Jones Utility after it voluntarily dismissed two of its counterclaims and the grant of summary judgment to Jones Utility on its remaining breach of contract counterclaim.[2]

## I. The Facts and Procedural History

Viewing the evidence and drawing all reasonable inferences in the light most favorable to Powrzanas as the non-moving party, see Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010), these are the facts. In 2006 Powrzanas began working

---

[1] The parties consented to the jurisdiction of a magistrate judge. See 28 U.S.C. § 636(c).

[2] Powrzanas has filed a motion asking this Court to stay a state court proceeding pending the resolution of this appeal. Jones Utility opposed that motion. Powrzanas cited no authority and provided no explanation for why a stay of the state court proceeding would be warranted. In any event, because our opinion has now issued, Powrzanas' motion for a stay is DENIED as MOOT.

at Jones Utility, a company owned by her father, Ricky Jones.[3]  She ran "the entire office" and oversaw its finances.  That included preparing accounting records, submitting payroll taxes, making cash deposits, and making sure the company was complying with federal and state regulations.

Powrzanas testified in her deposition that she had a difficult relationship with her father.  Ricky "cussed [her] every day of [her] life" and "constantly put [her] down."  They would argue with each other constantly and at one point in 2013, a fight between them led to her attempted suicide.  Powrzanas' mother often intervened to act as a buffer between them.

In January 2015 Powrzanas was diagnosed with fibromyalgia.   She blamed her condition on her father's behavior towards her.  Their fights did not stop after her diagnosis, and she was still required to come to work, but he allowed her to lie down or take breaks when she was sick.

After a twelve-year battle with cancer, Powrzanas' mother died in April 2015.  Without her as a buffer, Powrzanas' relationship with her father got worse.  Things came to a head in November 2015 when Ricky began dating a woman named Pat, who moved in with him two weeks later.  Powrzanas and Pat did not get along; Powrzanas believed Pat was on a mission to "shut [her] down."  After

---

[3] We refer to Ricky Jones by his first name in order to avoid confusion with the company, Jones Utility.

3

Pat moved in with Ricky, she began removing family photographs from the walls of the house.  Ricky started calling his daughter a "bitch[] [and a] greedy selfish little monster[]" and criticized her work performance.  He removed Powrzanas' name from one of his personal bank accounts.  Pat and Ricky also shared unwelcome personal details about their relationship.  Pat texted Powrzanas' sister Shawna a photo of Ricky sucking her toes in the bathtub, and Ricky told Powrzanas details about his sex life with Pat.

Powrzanas and her father began to have daily arguments about Pat.  When her father married Pat in January 2016 without a prenuptial agreement, Powrzanas became "concerned."  On February 12, 2016, Powrzanas resigned from her job at Jones Utility.  After her father threatened to shoot himself, she returned to her job the next workday.  But she told him that their arguments were making her fibromyalgia worse.  During that time, Powrzanas and Shawna, who believed that they would one day become owners of Jones Utility, offered to buy the company.  Powrzanas wanted to "make sure that [she] still had something to work for."  Ricky told them it was not for sale.  That conversation led to Ricky pulling out a gun, putting it in his mouth, and telling Powrzanas and Shawna, "I hope it blows my fucking head off and ya'll have to live with it."

On March 2, 2016, Powrzanas went out to lunch with Ricky, Pat, Shawna, and a few coworkers.  Powrzanas went to the bathroom, and when she returned to

4

the table, her father began yelling at her about how she was "being fucking rude and being a bitch" to Pat. They argued and her father stormed out of the restaurant. In the parking lot, he threw a to-go container of food against a van, got in his car, and sped off. Powrzanas told Shawna "I will not be humiliated in public. I'm done." She returned to work for three more days so she could be paid for the full week, and then she resigned. She saw her doctor at some point afterwards and described her resignation as due to a "family dispute."

In August 2016 Powrzanas applied for Social Security Disability Insurance (SSDI) benefits, claiming that she had become unable to work in March 2016 due to fibromyalgia and other health problems that had begun three years earlier. She stated that she had no energy to do anything that required exertion, had to be reminded to pay bills because she "forget[s] everything," could not participate in any social functions, and could pay attention for only 30 minutes at a time. She noted that she "can't do anything [and she has] to have help with everything." She also claimed that she had trouble with math, spelling, and reading. She was denied SSDI benefits after a determination that she was not disabled. She then filed a charge of discrimination against Jones Utility with the EEOC in August 2016 and received a right to sue letter in March 2017.

In June 2017 Powrzanas filed a complaint against Jones Utility in federal district court, raising claims of discrimination and retaliation under the ADA. She

alleged that she was diagnosed with fibromyalgia in January 2015, and in November 2015 her work relationship with her father became a "chaotic nightmare" with "daily arguments." She alleged that from January 4 to February 12, 2016, her father treated her abusively at work, regularly swore at her, and falsely accused her of workplace errors. She asserted that her father twice threatened to kill himself during their arguments. As part of her discrimination claim, she alleged that her illness was exacerbated by her father's constant harassment and his refusal to stop it, which led to her constructive discharge, and that Jones Utility had failed to reasonably accommodate her disability. She also alleged that Jones Utility retaliated against her after she informed her father that his behavior was affecting her health.

Jones Utility moved for summary judgment on Powrzanas' claims. It contended that her discrimination claim failed because the statements she made in her SSDI application established that she was not a "qualified individual." It also argued that she had not requested as a reasonable accommodation a stress-free work environment because a company had no duty to provide employees with one. It asserted that Powrzanas could not show a constructive discharge because there was no evidence of discrimination but only of a family dispute. Finally, it argued that Powrzanas' retaliation claim failed because she had not shown a causal

6

relation between her request to her father that he stop fighting with her and any adverse employment action.

Powrzanas opposed the summary judgment motion, arguing that her statements in her SSDI application claiming total disability were not inconsistent with her ADA claim that she could work even with a reasonable accommodation. She asserted that her father's "yelling, swearing, and false accusations caused 'negative effects' on her fibromyalgia" and that she had requested from him a reasonable accommodation "involving less abusive treatment, less yelling and cursing, as a way of managing her condition."  Instead of the situation improving after she complained about it, her father "escalate[d] the abusive and hostile treatment of Powrzanas yet again to a new level by yelling, cursing and fighting with her over [her] perceived rudeness . . . to his new wife."  Powrzanas did not specifically address Jones Utility's arguments about her retaliation claim.

After a hearing, the court granted the summary judgment motion.  The court acknowledged that a reasonable jury could find that it was "utterly intolerable for an employee to be forced to work in conditions where one day the employee's supervisor is wielding a firearm in his office and threatening to kill himself . . . and another day his temper flares so severely that he cannot contain his rage in public." Still, the court concluded that Powrzanas' ADA claim failed as a matter of law because there was no genuine issue of fact about whether she was a qualified

7

individual who had been denied a reasonable accommodation. The court also decided that she had abandoned her retaliation claim by failing to respond to Jones Utility's arguments and, alternatively, that there was no evidence creating a genuine issue of fact about whether her father's conduct was causally related to her disability. The result was summary judgment for Jones Utility on Powrzanas' claims. Powrzanas' motion for reconsideration was denied.

We review <u>de novo</u> a district court's grant of summary judgment. <u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute about any material fact and compels judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). We can affirm the district court's judgment on any basis supported by the record, regardless of whether the district court decided the case on that basis. <u>Club Madonna, Inc. v. City of Miami Beach</u>, 924 F.3d 1370, 1378 (11th Cir. 2019).

## II. The ADA Discrimination Claim

Powrzanas contends that, despite what she said in her SSDI application about being totally disabled, she is qualified individual, and Jones Utility denied her a reasonable accommodation. In order to establish a prima facie case of discrimination under the ADA, Powrzanas must establish that she is disabled, which Jones Utility doesn't deny. She must also establish that, although disabled,

8

she is a qualified individual, and she was subjected to unlawful discrimination because of her disability. Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007); see also 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual . . . .").

Even if we were to assume that Powrzanas was a qualified individual who requested a reasonable accommodation, she has not created a genuine issue of material fact that was "subjected to unlawful discrimination because of her disability." Greenberg, 498 F.3d at 1263 (emphasis added); see also Green v. Brennan, 136 S. Ct. 1769, 1777–78 (2016) (noting that "a constructive discharge claim requires two basic allegations: discriminatory conduct by the employer that leads to resignation of the employee.") (emphases added).[4] Powrzanas concedes that after she was diagnosed with fibromyalgia, her father allowed her to lie down and take breaks at work as needed. She asserts that her father's argumentative behavior worsened her condition and led to her constructive discharge. But there is no evidence in the record that his behavior towards her was because of her disability. Instead, the evidence undisputedly shows a long-term, toxic family dynamic that predated and was not caused by her fibromyalgia diagnosis.

---

[4] Green is a Title VII discrimination case, but discrimination cases brought under Title VII and the ADA are analyzed under the same framework. Holly v. Clairson Indust., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007).

Powrzanas testified that her father had cursed her every day of her life and that they fought constantly.  One of their fights led to her attempted suicide in 2013, long before her diagnosis.  Her complaint alleges that her father's discriminatory conduct began in November 2015, which is when new wife-to-be Pat entered the picture.  Powrzanas alleges that his behavior became worse from January to February 2016, when Pat and her father got married without a prenuptial agreement, and Powrzanas was concerned about losing the company.  By her own admission, Powrzanas did not get along with Pat, and Pat's abrupt entrance into their family life further deteriorated her already rocky relationship with her father.  It was a fight about Pat that led to the argument at a restaurant in March 2016 and Powrzanas' ensuing resignation because "she [would] not be humiliated in public."  Powrzanas has pointed to no evidence showing that her father's behavior towards her was <u>because of</u> her disability.  The district court did not err in granting summary judgment to Jones Utility on Powrzanas' ADA discrimination claim.

### III. The Retaliation Claim

Powrzanas contends that the district court erred in granting summary judgment to Jones Utility on her retaliation claim.[5]  Jones Utility contends that

---

[5] Powrzanas does not address on appeal the district court's determination that she abandoned her retaliation claim.  Because we conclude that her retaliation claim fails as a matter of law, we do not consider whether it was abandoned.

there is no genuine issue of material fact about whether any protected activity caused any adverse action. We agree.

Powrzanas argues that she engaged in a statutorily protected activity on February 15, 2016, when she told her father that his behavior was making her disability worse. She asserts that after she made that complaint, he retaliated against her by engaging in "severe and pervasive behavior towards her" that led to her resignation.

To establish an ADA retaliation claim, a plaintiff must prove that (1) she engaged in conduct protected by the ADA; (2) she suffered an adverse action; and (3) the employer took that adverse action because of the protected conduct. See Collado v. United Parcel Service, Co., 419 F. 3d 1143, 1158 (11th Cir. 2005); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). Assuming that her retaliation claim was properly preserved, and even assuming that her complaint to her father was protected activity, there is no genuine issue of fact about whether Jones Utility took adverse action against her because of that activity.

Close to the time she complained to her father about his behavior, she and her sister offered to buy the company from him, and she testified that he responded to that offer by pulling out a gun and threatening to shoot himself. The other major argument she says occurred after her complaint to her father was the one at the

11

restaurant on March 2, 2016.  During that argument, her father was infuriated because he thought Powrzanas was being rude to Pat.  There is no evidence in the record that either of those incidents related to Powrzanas' February 15 complaint to her father about his conduct.  And Powrzanas has pointed to no other arguments between her and her father, and to no other evidence even arguably supporting her claim of retaliation by Jones Utility within that time frame.  Not only that, but after she quit working at Jones Utility Powrzanas told her doctor that her resignation was due to a family dispute.  Because she has failed to show a genuine issue of any causal relation between her complaint to her father on February 15 and any adverse action, her ADA retaliation claim fails as a matter of law.

## IV. The Sanctions Motion

Powrzanas' remaining contentions involve Jones Utility's three counterclaims.  She first challenges the district court's denial of her motion for sanctions under Fed. R. Civ. P. 11(c) against Jones Utility and its counsel based on the assertion of those counterclaims.

Through its counsel, Jones Utility filed these counterclaims against Powrzanas: a breach of contract claim based on a promissory note for $66,000; a claim for conversion based on Powrzanas writing herself a check for $4,000 on the corporate bank account; and a claim for breach of fiduciary duty based on the same conduct.  The first counterclaim resulted in a grant of summary judgment in favor

12

of Jones Utility. The other two counterclaims were dismissed by Jones Utility after Powrzanas' deposition but before her father was deposed. Ricky Jones later testified that Powrzanas did not have permission to write herself a company check for $4,000, but pursuing a claim related to that check was "costing [him] more money to try to collect four thousand dollars than it's worth."

Powrzanas' motion for Rule 11 sanctions against Jones Utility and its counsel asserted that each of the three counterclaims were frivolous and had been filed in bad faith to retaliate against her for bringing the ADA lawsuit. She argues that the district court abused its discretion in deciding otherwise and denying her motion for sanctions. As she sees it, Jones Utility did not offer "an adequate or plausible explanation for the need to dismiss" its two counterclaims based on the $4,000 check but instead it dismissed those claims "to avoid an anticipated loss on the merits" after she had "made a substantial effort and incurred a substantial expense in preparation for trial."

We review a district court's denial of sanctions under Rule 11 only for an abuse of discretion. Peer v. Lewis, 606 F.3d 1306, 1311 (11th Cir. 2010). A district court abuses its discretion if it applies an erroneous legal standard, follows improper procedure, or makes clearly erroneous findings of fact. Id. "A clear error in judgment is also an abuse of discretion." Torres v. First Transit, Inc., No. 18-15186, ____ F.3d ___, 2020 WL 6144562, at *3 (11th Cir. Oct. 20, 2020)

13

(quotation marks omitted). In denying Powrzanas' sanctions motion, the district court was not guilty of any of those things.

The purpose of Rule 11 is to deter baseless filings. Id. The rule requires that an attorney or unrepresented party filing a pleading certify that the filing is not presented "for any improper purpose," such as "to harass . . . or needlessly increase the cost of litigation" and that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1), (3). If a court determines that a pleading was filed for an improper purpose, the court may impose an appropriate sanction on the responsible party. Id. 11(c)(1). In assessing the propriety of Rule 11 sanctions, we look at (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous. Peer, 606 F.3d at 1311.

The district court found that Jones Utility's counterclaims based on the $4,000 check were not frivolous because they had evidentiary support. There was evidence Powrzanas had written herself a $4,000 company check and cashed it, and Ricky Jones testified that she did not have authority or permission to do that. The district court also found that, "[o]ther than the bitter family feud underlying this action," there was no evidence of bad faith or improper purpose for the counterclaims. It noted that although Jones Utility took no steps to collect on the check until after Powrzanas had filed suit, the claims were compulsory under

14

Federal Rule of Civil Procedure 13 and had to be brought as counterclaims in this lawsuit or would be forfeited.[6]  The court correctly determined that the counterclaims based on the $4000 check had evidentiary support, were not objectively frivolous, and could not have been held for assertion in a later lawsuit. See Peer, 606 F.3d at 1311.

The same is even more true of the breach of contract counterclaim based on the $66,000 promissory note.  Jones Utility prevailed on it, which establishes as a matter of law that it was not frivolous.  Powrzanas protests that summary judgment should not have been granted against her on the breach of contract counterclaim, but she is wrong about that.

## V. The Breach of Contract Counterclaim

In 2011, Jones Utility loaned Powrzanas $66,000 as a capital investment in Karma Construction, Inc., and she signed a promissory note obligating her to repay that loan.[7]  Powrzanas testified that Jones Utility loaned money to her and to three other women (her sister Shawna, her mother, and a nonrelative) as start-up money for a firm called Karma Construction.

---

[6] Rule 13(a) provides that a party "must" state as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a)(1)(A).

[7] The promissory note contains a typographical error in one section indicating that the loan was for "one hundred thousand dollars," but the remainder of it refers to the loan amount as $66,000, and the parties agree that $66,000 is the correct amount.

The promissory note provided that Powrzanas would become "an original shareholder" in Karma and would own 22 percent of its stock. It set a repayment term of 60 months at 3 percent interest per year. During the term of the note, if Karma made distributions to its members, the amount of the distribution (less taxes) would be applied to any amount outstanding on the loan, and whatever balance remained outstanding on the loan was due from Powrzanas as a balloon payment on April 20, 2016. As the basis for its breach of contract counterclaim, Jones Utility alleged that Powrzanas had no payments at all on the loan, and it sought to recover the full balance due.

In her deposition Powrzanas conceded that she had not repaid any amount of the loan. But she asserted that it was not a real loan, and that she and Jones Utility, through her father, had agreed that she would have no obligation to repay any of it. She testified that Jones Utility wanted to start Karma so that her father could control a female-owned business, which would enable him to bid on construction contracts by local governments that gave preference to minority-owned or disadvantaged businesses. In order for Karma to qualify, its start-up funds could not be a gift from Jones Utility, so Powrzanas agreed to pretend (falsely represent) that the funds were a loan. She asserted that for all practical purposes Karma was Jones Utility's business and under her father's control. She pointed out that when Karma eventually shut down in 2014, Jones Utility paid off its debts.

16

Powrzanas testified that she did not read the note before signing it, but the note does include an "access to counsel" provision that states:

> This note has been drafted jointly by counsel for all Parties and will not be construed strictly against any Party. The Parties acknowledge that they have had full opportunity to review this Note and have had access to counsel of their choice to the extent they deem necessary in order to interpret the legal effect of this Note.

The record shows that Powrzanas retained a law firm to draft the note, and she emailed back and forth with the firm about the terms of it. In response to counsel telling her that she would be obligated to repay the loan if Karma did not make distribution payments, she replied "everything looks fine to me."

She testified that she had retained the firm at her father's request, and the firm represented Jones Utility, not her. But the record shows that Powrzanas claimed a loss on her 2011 personal tax return for her share of Karma's losses. Ricky Jones disputed Powrzanas' testimony about the loan and stated that it had been intended as real loan and made for the purpose of enabling Powrzanas and her sister to "have a business and make money."

In granting summary judgment to Jones Utility on its breach of contract counterclaim, the district court referred to the promissory note's merger clause. That clause provided that the terms constituted "the entire understanding[] and agreement[] between [Powrzanas] and [Jones Utility] . . . and supersedes all prior and contemporaneous understandings and agreements . . . ." The court stated that

17

"[b]efore allowing a party to a contract to avoid the parol evidence rule by arguing simply that the instrument just is not what it appears to be, there must be substantial evidence that the parties to the contract never intended to form a true agreement." It concluded that Powrzanas had not created a genuine issue of material fact about that.

Powrzanas contends that "the parol evidence rule has no application in an action alleging fraud." She argues, as she did in the district court, that the loan was a "sham," and she and Jones Utility had a contemporaneous oral agreement that she was under no legal obligation to repay the loan.[8]

The interpretation of a contract is a question of law that we review de novo. Dear v. Q Club Hotel, LLC, 933 F.3d 1286, 1293 (11th Cir. 2019). In construing a contract, we apply state law contract-interpretation principles. Id. Under Alabama law, which applies here, "[a] plaintiff can establish a breach-of-contract claim by showing the existence of a valid contract binding upon the parties in the action, the plaintiff's performance under the contract, the defendant's nonperformance, and damage." Ramsay v. Grove Hill Memorial Hosp. Auxiliary, 829 So. 2d 142, 145

---

[8] Powrzanas also asks us to take judicial notice of a state court order in a lawsuit between Jones Utility and her sister Shawna involving a similar promissory note. This Court has already denied Powrzanas' motion for judicial notice, and we note that the state court order would not alter the outcome of this appeal in any event.

(Ala. Civ. App. 2000). When there is no factual dispute that all four elements are met, summary judgment is warranted. Id. at 146.

A merger clause creates a presumption that a contract represents "an integrated, that is, the final and complete, agreement of the parties." Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001). When a merger clause exists and there is no ambiguity, "parol evidence will not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract." Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc., 601 So. 2d 942, 945 (Ala. 1992).

In Blake v. Coates, 294 So. 2d 433 (Ala. 1974), the Supreme Court of Alabama considered an argument almost identical to the one being made by Powrzanas. In that case a party to multiple promissory notes defended against liability on those notes by arguing that "there was an oral agreement that his signing was with an understanding that he would not be held personally liable on the notes." Id. at 434. The court rejected that argument, stating:

> If that be a defense to his liability on the notes, then his signing would be entirely pointless. It remains though that he did sign the notes. Such being the case, he is bound by the result of his act. It is familiar law that, in the absence of fraud in procuring the signature to a written contract by misrepresenting or concealing its contents, it cannot be impeached by proving a different contemporaneous agreement, or because the party signing was ignorant of its legal effect. If this were not the law, contracts would not be worth the paper on which they are written.

19

Id. at 435 (quotation marks omitted).

There is no genuine issue of fact about whether Powrzanas knew the express terms of the note when she signed it; she did.  The note contained an access to counsel provision stating that the parties "had full opportunity to review this Note and have had access to counsel of their choice to the extent they deem necessary in order to interpret the legal effect of this Note."  Powrzanas worked with counsel in regard to the terms of the note.  Jones Utility performed under those terms:  it loaned Powrzanas $66,000 so that she could purchase 22 percent ownership of Karma. She did not repay the money when it was due.  Her defense that the parties had a separate oral agreement that she would not be obligated to pay back the loan fails under Alabama law.  See id.[9]

**AFFIRMED.**

---

[9] We realize that Blake referred to an exception for "fraud in procuring the signature to a written contract by misrepresenting . . . its contents."  294 So. 2d at 435.  See also Environmental Systems, Inc. v. Rexham Corp., 624 So. 2d 1379, 1383 (Ala. 1993) ("[T]he law in [Alabama] renders an integration, or merger, clause ineffective to bar parol evidence of fraud in the inducement or procurement of a contract.").  Powrzanas has forfeited any argument that she was fraudulently induced to sign the note because she raised that argument for the first time in her reply brief.  See In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or [which are] raised for the first time in a reply brief are deemed waived.").  Powrzanas also forfeited this issue by failing to properly raise it in the district court.  She did not raise the issue in her response to the motion for summary judgment or at the hearing on that motion, as Jones Utility and the district court both pointed out.  She did not raise it until her motion for reconsideration of the court's order granting Jones Utility summary judgment, and "courts will not address new arguments [in a motion to reconsider] . . . that the moving party could have raised before the decision issued."  Banister v. Davis, 140 S. Ct 1698, 1703 (2020).